FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

DEC - 8 2009

CENTRAL DISTRICT OF CALIFORNIA
BY                        DEPUTY

LODGED
CLERK, U.S. DISTRICT COURT
SOUTHERN DIVISION

DEC - 4 2009

CENTRAL DISTRICT OF CALIFORNIA
BY                        DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRION JEANNETTE ARCHITECTURE, | CASE NO.  07-CV-00691 CJC (RNBx) |
| Plaintiff, | **Assigned For All Purposes To:** Judge:  Cormac J. Carney Dept:    9B |
| v. | **JUDGMENT** |
| KTGY GROUP, INC., a California corporation; ROBERT WILLIAMS, an individual, and DOES 1-25, | |
| Defendants. | TRIAL DATE:  None |

**TO ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

    **PLEASE TAKE NOTICE THAT,** the Court, having dismissed all of

plaintiff Brion Jeannette Architecture's federal claims and having denied plaintiff

leave to amend its Complaint, having dismissed plaintiff's state law claims

without prejudice, and having awarded costs to defendants as set forth in the

attached Minute Orders of this Court, which Orders are attached as Exhibits A

through D, and adopted by this reference as though set forth in this Judgment.

    For good appearing, the Court now enters Judgment for defendants KTGY

Group, Inc. and Robert Williams and against plaintiff Brion Jeannette

Architecture consistent with the attached Minute Orders, including awarding

defendants' their costs as the prevailing party on plaintiff's Lanham Act claim in

1  the amount of $11,103.22.

2      *IT IS SO ORDERED, ADJUDGED, AND DECREED.*

3

4

5  Dated:  December __8__, 2009

6

7                                    By: _____

8                                        HON. CORMAC J. CARNEY,
                                         U.S. DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit A

**JS-6**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| BRION JEANNETTE ARCHITECTURE | ) Case No.: **SACV 07-00691-CJC(RNBx)** |
| Plaintiff, | ) **ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DISMISSING CASE** |
| v. | ) |
| KTGY GROUP INC., ROBERT WILLIAMS, and DOES 1-25 | ) |
| Defendants. | ) |

## I.     INTRODUCTION

This case arises from a dispute between one architecture firm, Plaintiff Brion Jeannette Architecture ("BJA"), a former employee, Defendant Robert Williams, and the firm he left BJA to work for, Defendant KTGY Group Inc. ("KTGY") (collectively "Defendants"). While working for KTGY, Mr. Williams made copies of BJA's sketches and photographs of BJA luxury home designs and allegedly presented them to a prospective client in a misleading way as designs that he created while at BJA. Mr.

Williams did not design the homes.  He only managed the production and construction phases of the homebuilding.  BJA filed suit against Defendants for violating the false origin provision of the Lanham Act and for various state law claims.  Defendants have moved for summary judgment.  The Court finds that BJA has not shown a cognizable issue of fact as to whether Defendants violated the Lanham Act by misrepresenting that Mr. Williams created certain BJA home designs.  The Lanham Act does not provide a cause of action against parties like Mr. Williams who pass themselves off as the original designer or author of a work.  Rather the Lanham Act only protects plaintiffs against those who pass themselves off as the original producers or manufacturers of tangible goods.  Accordingly, Defendants' motion for summary judgment is GRANTED as to the Lanham Act claim.  As to the remaining state law claims for common law misappropriation and slander of title, the Court declines to exercise supplemental jurisdiction over them for reasons of federalism and comity.  Accordingly, the claims for common law misappropriation and slander of title are DISMISSED.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

For approximately fourteen years, Mr. Williams worked for BJA.  (Def.'s Statement of Uncontroverted Facts and Conclusions of Law ("Def's Statement") ¶ 2.) Williams departed BJA for a job at KTGY, another architectural firm, in 2001.  (Def.'s Statement ¶¶ 3-4.)  Mr. Williams worked on several projects at BJA as a project manager but was not the principal designer on those projects.  (Def.'s Statement ¶¶ 5-8, Pl.'s Statement of Genuine Issues and Supporting Evidence ("Pl's Statement") ¶¶ 14-15.)  Those projects were largely designed by Brion Jeannette himself.  (Pl.'s Statement ¶ 41.)  Williams downloaded pictures of BJA projects and put them in his portfolio.  (*Id.* ¶ 43.)  Those materials were marked with a note stating "[t]his project was managed by Rob Williams while a principal at Brion Jeannette Architects."  (Def.'s Statement ¶ 19.)

1   While at KTGY, Mr. Williams used depictions of BJA products to sell his services for

2   KTGY, without BJA's knowledge or consent. (*Id.* ¶¶ 52, 72.)

3

4           In 2007, BJA learned about Mr. Williams' use of its designs to promote his and

5   KTGY's services from Dana Mason, one of Mr. Williams' clients. (Pl.'s Statement ¶

6   72.) Dr. Mason wished to build a custom home in Laguna Beach and contacted Mr.

7   Williams after her original architect died. (*Id.* ¶¶ 62, 64.) Accordingly, Dr. Mason met

8   with Mr. Williams at her medical office to discuss her project and his qualifications.

9   (*Id.* ¶ 65.) At the meeting, Mr. Williams presented Dr. Mason with marketing materials

10  that included homes designed by Brion Jeannette. (*Id.* ¶ 66.) The materials were

11  presented in the form of 10 cut-sheets that each contained drawings or photographs of

12  different elevations of homes. (Decl. of Dana Mason, December 12, 2008 ("Mason

13  Decl.") Ex. A.) Mr. Williams allegedly told Dr. Mason that he "designed all of these

14  homes." (*Id.* ¶ 67.) After difficulties arose between Mr. Williams and Dr. Mason, Dr.

15  Mason spoke with an owner of a home that Mr. Williams allegedly claimed to have

16  designed. (Mason Decl. ¶¶ 10-11.) Dr. Mason found out that Mr. Williams had not

17  designed the home, and that the home's owner had never heard of Mr. Williams. (*Id.* ¶¶

18  11-13.)

19

20          In June 2007, BJA filed its original Complaint against KTGY and Mr. Williams.

21  BJA has twice amended its pleadings over the course of this case. Its Second Amended

22  Complaint ("SAC") originally listed claims for violation of the Lanham Act and

23  California's Uniform Trade Secrets Act, breach of contract, slander of title to personal

24  property, quiet title, common law misappropriation, and violations of 18 U.S.C. § 1030

25  and 18 U.S.C. § 2318. Over the past few months, the parties have dismissed all the

26  claims in this matter except for violation of the Lanham Act, common law

27

28

1  misappropriation, and slander of title.[1] Defendants have moved for summary judgment.

2  At its initial hearing on Defendants' summary judgment motion, the Court requested

3  supplemental briefing on two issues that were not covered in the initial summary

4  judgment papers: (1) whether the United States Supreme Court case *Dastar Corp. v.*

5  *Twentieth Century Fox Film* forecloses BJA's claim for violation of the Lanham Act,

6  and (2) whether the Court should continue to exercise supplemental jurisdiction over

7  the remaining state law claims if it determines that BJA has not made a sufficient

8  showing to avoid summary judgment on the Lanham Act claim.

9

10  **II. LEGAL STANDARD**

11

12  Summary judgment is proper if the evidence before the court "show[s] that there

13  is no genuine issue as to any material fact and that the moving party is entitled to

14  judgment as a matter of law." FED. R. CIV. P. 56(c); see also *Celotex Corp. v. Catrett*,

15  477 U.S. 317, 322 (1986). A factual issue is "genuine" when there is sufficient

16  evidence such that a reasonable trier of fact could resolve the issue in the non-movant's

17  favor, and an issue is "material" when its resolution might affect the outcome of the suit

18  under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

19  The moving party bears the initial burden of demonstrating that there are no genuine

20  material issues, and that it is entitled to judgment as a matter of law. *T.W. Elec. Serv.,*

21  *Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987). Once this

22  burden has been met, the party resisting the motion "must set forth specific facts

23  showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. In

24  considering a motion for summary judgment, the court must examine all the evidence in

25  the light most favorable to the non moving party. *United States v. Diebold, Inc.*, 369

26

---

27  [1] Additionally, BJA argues that it has asserted a valid claim of copyright infringement

28  although it has not pleaded copyright infringement and the Court has denied a prior motion by
BJA for leave to amend its SAC to add a claim for copyright infringement.

1 U.S. 654, 655 (1962).  The court does not make credibility determinations, nor does it

2 weigh conflicting evidence.  *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504

3 U.S. 451, 456 (1992).

4

5 ### III. ANALYSIS

6

7 #### A. Lanham Act

8

9 Section 43(a) of the Lanham Act states that:

10

11 (1) Any person who, on or in connection with any goods or services, or any
   container for goods, uses in commerce any word, term, name, symbol, or

12 device, or any combination thereof, or any false designation of origin,
   false or misleading description of fact, or false or misleading

13 representation of fact, which—

14

15 (A) is likely to cause confusion, or to cause mistake, or to deceive as to the
   affiliation, connection, or association of such person with another person,

16 or as to the origin, sponsorship, or approval of his or her goods, services,
   or commercial activities by another person, or

17

18 (B) in commercial advertising or promotion, misrepresents the nature,
   characteristics, qualities, or geographic origin of his or her or another

19 person's goods, services, or commercial activities,

20

21 shall be liable in a civil action by any person who believes that he or she
   is or is likely to be damaged by such act.

22

23 15 U.S.C. § 1125.  In *Dastar Corp. v. Twentieth Century Fox Film*, the Supreme

24 Court ruled in favor of a company that was being sued under the Lanham Act for

25 producing a video tape that was merely a repackaging of an older World War II

26 documentary taken from the public domain.  539 U.S. 23, 25-30 (2003).  Although

27 the videotapes contained false statements that they were produced by Dastar, the

28 Supreme Court held that passing off another's intellectual property as one's own

1  does not violate the Lanham Act. *Dastar* interprets the Lanham Act phrase "origin,

2  sponsorship, or approval of his or her goods" as referring to "the producer of the

3  tangible product sold in the marketplace." *Dastar* 539 U.S. at 31-32. "[A]s used in

4  the Lanham Act, the phrase 'origin of goods' is in our view incapable of connoting

5  the person or entity that originated the ideas or communications that 'goods'

6  embody or contain. Such an extension would not only stretch the text, but it would

7  be out of accord with the history and purpose of the Lanham Act and inconsistent

8  with precedent." *Id.* at 32. Put simply, *Dastar* restricts the valid application of the

9  Lanham Act to misrepresentations about who made something or where they made

10  it. Misrepresentations about who thought something up are not actionable in

11  *Dastar's* wake.

12

13      Since *Dastar*, federal courts have consistently held "that 'origin' in this statutory

14  context denotes only the manufacturer or producer of the physical goods and not the

15  creator of the intellectual property embodied in those goods." MCCARTHY ON

16  TRADEMARKS § 27:85. In *Williams v. UMG Recordings, Inc.*, a district court held that a

17  plaintiff's claims were precluded by the *Dastar* decision when a motion picture producer

18  sold a film that failed to credit the plaintiff for his narration and direction. 281

19  F.Supp.2d 1177 (C.D. Cal. 2003). The Lanham Act's false origin designation applies

20  only to tangible goods, the court held. *Id.* "Plaintiff would have a claim if Defendants

21  purchased copies of Plaintiff's goods (i.e. the film) and repackaged them as their own.

22  By contrast, Plaintiff does not have a claim for his authorship and direction embodied in

23  that film. His claim, therefore, is barred as a matter of law." *Id.* at 1183. The district

24  court rejected the plaintiff's argument—advanced again here by BJA—that *Dastar*

25  applies only to misrepresentation of goods, not services. "Indeed, in *Dastar*, the

26  defendant did exactly what Plaintiff accuses Defendants of doing here—attributing to

27  itself and its employees various 'services' that the plaintiffs claimed they, in fact,

28  provided on the defendant's videotapes." *Id.* at 1177.

1    A district court has made similar findings in the field of building design.  In

2  *Larkin Group, Inc. v. Aquatic Design Consultants, Inc.*, a district court found that

3  defendants were not liable for reverse passing off under *Dastar* when employees at a

4  design firm stole designs from their employer, and submitted the designs to prospective

5  clients as their own.  323 F.Supp.2d 1121 (D. Kan., 2004).  The *Larkin* plaintiffs were

6  accused of taking designs for aquatic centers from their employer, splitting off from

7  their employer, then incorporating their employer's designs into their own, without

8  crediting their employer.  *Id.* at 1127.  That activity, the court held, was not a violation

9  of the Lanham Act due to *Dastar*. *Id.*

10

11    The present case involves misrepresentations about home designs.  Mr. Williams

12  allegedly misrepresented that he designed homes that were, in fact, designed by Brion

13  Jeannette.  He did this when he was selling his design services.  This is not a violation

14  of the Lanham Act because it is a misrepresentation concerning the creator of

15  intellectual property.  *Dastar* bars a suit based on such misrepresentations. These are

16  not misrepresentations regarding "the producer of the tangible product sold in the

17  marketplace." *Dastar*, 539 U.S. at 31-32.  Rather, Defendants are accused of

18  misrepresenting "the person or entity that originated the ideas or communications that

19  'goods' embody or contain." *Id.* at 32.  The only tangible goods at issue in this case

20  were photos and cut sheets.  Defendants were not selling those photos and cut sheets.

21  Rather, they were selling their design services and using those cut sheets as marketing

22  materials.

23

24    BJA argues that this case is distinguishable from *Dastar* and its progeny.  *Dastar*,

25  BJA argues, is limited to the misrepresentations about the origin of goods or services

26  headed directly to the market.  BJA argues that "[u]nlike *Dastar*, the defendants were

27  not selling their brochure or any other good, but rather using 'false and misleading'

28  marketing materials to sell design services—the *same* services plaintiff sells." (Pl.'s

Case 8:07-cv-00691-CJC-RNB   Document 172   Filed 12/08/09   Page 11 of 22   Page ID
Case 8:07-cv-00691-C   NB   Document 148   Filed 0.   2009   Page 8 of 11
#:5295

Supp. Brf. at 7.)  Put simply, BJA argues that Mr. Williams was passing himself off as
the creator of a good in order to win new business for himself, not just selling goods
that he did not create.  Courts have found this is a distinction without a difference.  For
example, in *Bretford Manufacturing Inc. v. Smith System Manufacturing Inc.*, a
furniture manufacturer passed off a table leg made by a competitor as his own creation,
in order to win business building a table.  286 F.Supp.2d 969 (N.D. Ill 2003).  The
Court held that *Dastar* precluded the plaintiff's relief under the Lanham Act because it
requires that a defendant misrepresent the nature of a finished product sold at market.
*Id.* at 972.  "The complete product is what counts, and there was no misrepresentation,
or false advertising, in regard to the completed products—the tables—that were sold to
the District."  *Id.  Dastar* means that § 1125(1)(A) simply does not apply to samples
provided for promotional purposes.

Mr. Williams misrepresented himself as the designer of several BJA homes.  He
made this misrepresentation in an attempt to gain customers for his design services.
This was a misrepresentation related to the intellectual origin of a good or service, not
the physical origin of the good or service.  He did not misrepresent the physical origin of
the designs or the cut sheets, nor was he selling the cut sheets themselves.  Therefore,
*Dastar* and its progeny bar BJA's Lanham Act claim.[2]

---

[2] BJA also argues that its claims are viable under 15 U.S.C. § 1125(1)(B), the false
advertising prong of the Lanham Act. The Court disagrees.  The Ninth Circuit has held that the
ruling in *Dastar* also limits claims made under the "commercial advertising" prong.
*Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137 (9th Cir. 2008).  Interpreting and
applying Ninth Circuit law in a Lanham Act case, the Federal Circuit held that 15 U.S.C. §
1125(1)(B) did not give rise to a cause of action for false advertising based on false designation
of authorship.  *Baden Sports Inc., v. Molten USA, Inc.*, 556 F.3d 1300 (Fed. Cir. 2009).
"Following *Sybersound's* reasoning, we conclude that authorship, like licensing status, is not a
nature, characteristic, or quality, as those terms are used in Section 43(a)(1)(B) of the Lanham
Act."  *Id.* at 1307.  In the present case, the Court agrees that *Dastar* precludes claims under §
1125(1)(B).  Furthermore, BJA has not shown that the misrepresentations made by Defendants
were sufficiently widespread to be actionable as commercial advertising.  To satisfy the
Lanham Act's test for what constitutes commercial advertising or promotion, the material at

Case 8:07-cv-00691-CJC-RNB   Document 172   Filed 12/08/09   Page 12 of 22   Page ID
Case 8:07-cv-00691-C    NB   Document 58   Filed 0    2009   Page 9 of 11
#:3296

## B. Supplemental Jurisdiction

In cases in which the federal claim is dismissed before trial and only state law claims remain, a court has the discretion to dismiss the state law claims without prejudice so they may be heard in an appropriate state forum. 28 U.S.C. § 1367(c)(3); *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966). Section 1367(c) provides that district courts may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c). "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties," and where federal claims are dismissed early in the litigation, the state claims should be dismissed as well. *United Mine Workers* 383 U.S. at 726. The justification for exercising supplemental jurisdiction "lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them." *Id.* As the Ninth Circuit noted, "[i]n the usual case in which federal law claims are eliminated before trial, the balance of factors will point toward declining to exercise jurisdiction over the remaining state law claims." *Reynolds v. County of San Diego*, 84 F.3d 1162, 1171 (9th Cir. 1996). Applying this principle, the Ninth Circuit found in *Bryant v. Adventist Health System/West* that if a district court did not err in granting summary judgment on the federal claims, "it did not abuse its discretion in dismissing the state-law claims." 289 F.3d 1162, 1169 (2002).

---

issue must be "sufficiently disseminated to the relevant purchasing public to constitute . . . 'promotion' within that industry." *Coastal Abstract Service, Inc. v. First American Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999) (citation omitted). The statement allegedly made to Ms. Mason alone is insufficiently disseminated to constitute false advertising. One person is not a sufficient segment of an entire market.

Case 8:07-cv-00691-CJC-RNB   Document 172   Filed 12/08/09   Page 13 of 22   Page ID
Case 8:07-cv-00691-C    NB   Document 3237   Filed 07    2009   Page 10 of 11
#:3237

1    Because the Court has no interest in adjudicating state law claims, principles of

2    comity and federalism demand that the Court decline to exercise supplemental

3    jurisdiction over BJA's remaining state law claims.  There is no federal issue here.  State

4    courts have a great interest in deciding questions of purely state law, and federal courts

5    must respect this interest.  Particularly with respect to causes of action in which no

6    federal interest is implicated and no federal right may be harmed, federal courts must

7    avoid needless adjudication of state law claims.  The Court's interests in promoting

8    comity and protecting the state's interest in adjudicating state law claims outweigh any

9    concern with judicial economy.  Moreover, BJA has not provided any evidence that it

10   will be unfairly prejudiced by litigating its claims in state court.  BJA will have a full

11   and fair opportunity to litigate its claims on the merits in an appropriate state forum.[3]

12

13   BJA argues that this case involves a valid—if unpleaded—claim for copyright

14   infringement, so it would be inappropriate for the Court to dismiss the remaining state

15   law claims.  The Court has already considered whether to allow BJA to amend its SAC

16   to add its claim for copyright infringement after it had been litigating this case for nearly

17   two years.  BJA provided no basis or explanation for its delay, and the Court

18   accordingly denied BJA's request.  The Court held:

19
20       In *Kaplan v. Rose*, the Ninth Circuit upheld a district court's refusal to allow
         amendment when trial was only two months away, and discovery was
21       completed.  *Kaplan v. Rose*, 49 F.3d 1363, 1370 (1997).  "Expense, delay,
         and wear and tear on individuals and companies count toward prejudice." *Id.*
22       The Ninth Circuit has further held that "late amendments to assert new
         theories are not reviewed favorably when the facts and the theory have been
23       known to the party seeking amendment since the inception of the cause of
         action."  *Acri v. International Ass'n of Machinists*, 781 F.2d 1393, 1398 (9th
24       Cir. 1986).  Defendants here argue that the addition of this claim will
         prejudice them by forcing them to prepare new legal defenses, possibly
25       conduct new discovery, and file new substantive and pretrial motions.  The
26
27

28   _____
     [3] Defendants have stated that they favor litigating the remaining claims in state
     court.

Case 8:07-cv-00691-CJC-RNB    Document 172    Filed 12/08/09    Page 14 of 22    Page ID
Case 8:07-cv-00691-C.    NB    Document 3258    Filed 07    2009    Page 11 of 11
#:3258

Court agrees. BJA has had two opportunities to amend [its] complaint and
knew of the copyright infringement claim when it submitted its SAC. BJA
should have asserted the claim at that time and has not submitted either
evidence or argument to explain why it did not. To allow it now would
prejudice Defendants or cause undue delay to this two-year-old case's
resolution.

(Order at 2-3.) BJA still has not given the Court any new evidence or argument to
explain why it has waited two years to plead or assert its claims for copyright
infringement. Elements of a copyright infringement claim differ from any other claim
alleged in this case. Thus, adding a new claim would still cause prejudice to
Defendants. They should not have to pay the price for BJA's dilatory assertion of
copyright infringement.[4]

## V.    CONCLUSION

Defendants' motion for summary judgment is GRANTED as to BJA's claim
under the Lanham Act. The Court declines to exercise supplemental jurisdiction over
the remaining state law claims. Accordingly, this case is DISMISSED.

DATED: July 30, 2009

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE

---

[4] The Court's scheduling order in this case required the parties to file all motions to
amend their pleadings by January 23, 2009. This deadline was in BJA's sights when it filed its
SAC in December, 2008. The Court has the authority to manage its docket in an efficient and
fair manner. To allow amendment at this late stage would undermine the Court's authority in
this regard and result in significant delay, needless expense, and prejudice to Defendants.

# Exhibit B

# UNITED STATES DISTRICT COURT
## Central District of California

Brion Jeannette Architecture

**BILL OF COSTS**

V.

Case Number: CV07-0691 CJC (RNBx)

KTGY Group, Inc., et. al.

Judgment having been entered in the above entitled action on ___July 30, 2009___ against ___Brion Jeannette Architecture___
the Clerk is requested to tax the following as costs:                        Date

| | |
|---|---|
| Fees of the Clerk ............................................................ | $ 0.00 |
| Fees for service of summons and subpoena ............................................. | $2,230.97 (Attachment B and Exhibits 13-20) |
| Fees of the court reporter for all or any part of the transcript necessarily obtained for use in the case (Expedited or daily transcripts require prior Court Order.) | |
| 1. Trial Transcripts, if requested by the Court or prepared pursuant to stipulation ........... | 0.00 |
| 2. Deposition Transcripts (includes non-expedited transcripts, the reporter's appearance fee, fees for binding, bates stamping, non-expedited shipping & handling, processing fee, ASCII disks, production and code compliance charge, electronic transmission charge, miniscripts and witness handling charges) ......................................................... | $9,566.59 (Attachment A and Exhibits 1-11) |
| Fees and disbursements for printing ....................................................... | 0.00 |
| (The costs of copies of an exhibit attached to a document necessarily filed and served.) | |
| Fees for witnesses (itemize on page 2 of 3) ............................................. | $592.00 (Attachment B and Exs 13-20) |
| Fees for exemplification and copies of papers necessarily obtained for use in the case ............. | 0.00 |
| Docket fees under 28 U.S.C. 1923 (if incurred) ......................................... | 0.00 |
| Costs as shown on Mandate of Court of Appeals ........................................ | 0.00 |
| Compensation of court-appointed experts ............................................... | 0.00 |
| Compensation of interpreters and costs of special interpretation services under 28 U.S.C. 1828 ..... | 0.00 |
| Other costs to be taxed pursuant to prior Court approval (please itemize) ...................... | 0.00 |
| **TOTAL** | $ ~~11,389.56~~ 11,103.22 |

SPECIAL NOTE: Attach to your bill an itemization and documentation for requested costs in all categories.

---

## DECLARATION

I declare under penalty of perjury that the foregoing costs are correct and were necessarily incurred in this action and that the services for which fees have been charged were actually and necessarily performed. A copy of this bill has been served on all parties in the following manner:

☒ Electronic service by e-mail as set forth below and/or.
☐ Conventional service by first class mail, postage prepaid as set forth below

s/ Attorney: _David L. Brandon_____

Name of Attorney: _David L. Brandon_____

Costs are taxed in the amount of $ 11,103.22

_Terry Nafisi_____    By: _J. Abbernott_____    _8/28/09_
Clerk of Court                        Deputy Clerk                   Date

# Exhibit C

Case 8:07-cv-00691-CJC-RNB  Document 172  Filed 12/08/09  Page 18 of 22  Page ID
#:3202
Case 8:07-cv-00691-C   RNB  Document 169   Filed 0   2009   Page 1 of 3

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No. SACV 07-00691-CJC(RNBx)            Date:  September 23, 2009

Title: BRION JEANETTE ARCHITECTURE v. KTGY GROUP ET AL.

PRESENT:

### HONORABLE CORMAC J. CARNEY, UNITED STATES DISTRICT JUDGE

| Nancy Boehme | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFF:     ATTORNEYS PRESENT FOR DEFENDANT:

None Present                                                      None Present

**PROCEEDINGS: (IN CHAMBERS) ORDER DENYING PLAINTIFF'S MOTION
TO STRIKE OR RE-TAX COSTS** [filed 09/01/09]

Having read and considered the papers presented by the parties, the Court finds
this matter appropriate for disposition without a hearing. *See* FED. R. CIV. P. 78; LOCAL
RULE 7-15. Accordingly, the hearing set for September 28, 2009 at 1:30 p.m. is hereby
vacated and off calendar.

**Background**

This case arises from a dispute between Plaintiff Brion Jeannette Architecture
("BJA") and Defendants KTGY Group, Inc. and Robert Williams (collectively
"Defendants"). BJA previously brought a Lanham Act claim alleging that Defendants
misrepresented that Mr. Williams had created certain BJA home designs. BJA also
asserted claims based on state law. The Court granted summary judgment in favor of
Defendants on the Lanham Act claim and declined to exercise supplemental jurisdiction
over the remaining state law claims. On August 28, 2009, the Clerk of Court for the
Central District of California taxed $11,103.22 in costs to BJA. BJA now moves to have
the Court strike or re-tax these costs. BJA's motion is DENIED.

**Legal Standard**

Unless a federal statute or court order provides otherwise, costs other than
attorneys' fees are awarded to a prevailing party as a matter of course. FED. R. CIV. P.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No. SACV 07-00691-CJC(RNBx)                    Date:  September 23, 2009
                                                    Page 2

---

54(d)(1).  The term "prevailing party" generally refers to a party in whose favor a
judgment is rendered, regardless of the amount of damages awarded.  *Buckhannon Bd. &
Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001)
(quoting BLACK'S LAW DICTIONARY 1145 (7th ed. 1999)); C.D. CAL. LOCAL R. 54-2.2.
Local Rule 54-2.2 also states that the "defendant is the prevailing party when the
proceeding is terminated by court-ordered dismissal or judgment in favor of the
defendant."  For Lanham Act cases, 15 U.S.C. § 1117(a) provides that a prevailing
plaintiff may recover defendant's profits, any damages sustained by the plaintiff, and the
costs of the action.  This section is silent with respect to prevailing party defendants.

**Analysis**

        Since the Court granted summary judgment in favor of Defendants and dismissed
BJA's state law claims, Defendants are the prevailing party.  BJA argues that since §
1117(a) only references the ability of prevailing plaintiffs to recoup costs, the omission of
prevailing defendants constitutes an exception to FRCP 54(d)'s cost provision.  The
Court disagrees.  Though § 1117(a) limits prevailing defendants to recovering attorneys'
fees in "exceptional" circumstances, nowhere does § 1117(a) state that prevailing
defendants are prohibited from being reimbursed for costs pursuant to FRCP 54(d).  BJA
cites no persuasive authority to support its position that Congress divested prevailing
defendants of the right to costs conferred by FRCP 54(d) where prevailing plaintiffs are
afforded that same opportunity.  Nor can the Court conceive of any rational basis for
Congress to do so.

        BJA also argues that even if the Court permits Defendants to recoup some costs,
Defendants should not be entitled to the costs of video transcription of Defendants' own
party and party-affiliated witnesses.  Defendants argue that since BJA ordered the
videotaping for the depositions of Defendants' party-related witnesses, it is fair for BJA
to bear that cost.  BJA has not responded directly to this argument and instead reasserts
that it was unreasonable to have both transcripts and videotapes made.  Pursuant to Local
Rule 54-4.6(a), the Court has discretion to award costs for videotaped depositions.  In
light of the fact that BJA ordered the videotaping, it is only fair to hold BJA accountable
for that cost.  Accordingly, per FRCP 54(d) and Local Rules 54-1, 54-2 and 54-4.6,
Defendants are entitled to the costs assessed by the Clerk of Court.

Case 8:07-cv-00691-CJC-RNB   Document 172   Filed 12/08/09   Page 20 of 22   Page ID
Case 8:07-cv-00691-C    RNB   Document 169   Filed (   /2009   Page 3 of 3
#:3264

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 07-00691-CJC(RNBx)                      Date:  September 23, 2009
                                                      Page 3

---

**Conclusion**

    For the foregoing reasons, BJA's motion to strike or re-tax costs is DENIED.

imd

MINUTES FORM 11
CIVIL-GEN                                        Initials of Deputy Clerk NB

**Exhibit D**

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 07-00691-CJC(RNBx)                Date:  September 9, 2009

Title: <u>BRION JEANETTE ARCHITECTURE v. KTGY GROUP, INC. ET AL</u>

PRESENT:

**<u>HONORABLE CORMAC J. CARNEY, UNITED STATES DISTRICT JUDGE</u>**

<u>Stephanie Mikhail</u>                        <u>   N/A   </u>
Deputy Clerk                                  Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFF:        ATTORNEYS PRESENT FOR DEFENDANT:

None Present                                  None Present

**PROCEEDINGS: (IN CHAMBERS) ORDER DENYING DEFENDANTS'**
**MOTION FOR ATTORNEY FEES** [filed 08/13/09]

        Having read and considered the papers presented by the parties, the Court finds
this matter appropriate for disposition without a hearing.  *See* FED. R. CIV. P. 78; LOCAL
RULE 7-15.  Accordingly, the hearing set for September 14, 2009 at 1:30 p.m. is hereby
vacated and off calendar.

        Defendants' motion for attorneys' fees under Section 1117(a) of the Lanham Act
is DENIED.  This case was not an exceptional one that was groundless, unreasonable,
vexatious or pursued in bad faith.  To the contrary, Plaintiff presented evidence that
Defendants presented sketches and photographs of Plaintiff's luxury home designs to a
prospective client in a very misleading way as designs that they created.  There is Ninth
Circuit case law prior to the Supreme Court's holding in *Dastar Corp. v. Twentieth
Century Fox Film* that supports Plaintiff's position that such conduct on Defendants' part
constituted false designation of origin in violation of the Lanham Act.  It would be unjust
to award attorneys' fees in these circumstances.

MINUTES FORM 11
CIVIL-GEN                                                Initials of Deputy Clerk sdm